IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| **AUTHWALLET, LLC,** | |
|                                   **Plaintiff,** | Civil Action No. 7:24-cv-00063-DC-DTG |
|       v. | |
| **FISERV, INC.,** | **JURY TRIAL DEMANDED** |
|                                   **Defendant.** | |

**FISERV, INC.'S MOTION TO DISMISS**

This is Plaintiff AuthWallet, LLC's second attempt to assert the same claims against Defendant Fiserv, Inc. for infringing a patent that is directed to classic patent-ineligible subject matter. *See AuthWallet, LLC v. Fiserv, Inc.*, No. 6:23-cv-00145-DAE (W.D. Tex.), Dkt. 1. Plaintiff first filed this lawsuit last year in the Waco Division ("Waco Action") but unilaterally dismissed that case after Fiserv's motion to dismiss (based on § 101 grounds and pleading deficiencies) was fully briefed to avoid a decision that likely would have extinguished a litigation campaign designed to extort cost-of-defense settlements. Over a year after filing the Waco Action, Plaintiff recycled its complaint and preliminary infringement contentions claim chart from the Waco Action and filed this case.[1] But the Complaint here is just as deficient as AuthWallet's previous pleadings, and this Motion raises the same issues presented to Judge Ezra in the Waco Action last year, highlighting the wastefulness of AuthWallet's litigation strategy.[2]

First, AuthWallet's '368 Patent is invalid because it claims patent-ineligible subject matter, and no artful pleading can change that. That issue was already decided by the Federal Circuit for a closely related patent. Ex. A *(In re AuthWallet*, *LLC*, No. 2022-1842, 2023 U.S. App. LEXIS 11420, at *1 (Fed. Cir. May 10, 2023) (affirming dismissal of AuthWallet's claims asserting U.S. Patent No. 9,252,852 ("'852 Patent") (Ex. B) on the basis that the patent is invalid under § 101);

---

[1] AuthWallet's claim chart (Dkt. 1-2, Compl. Ex. B) is the same chart that was included in its June 14, 2023 infringement contentions in the Waco Action. The Complaint is substantially the same as the complaint filed in the Waco Action too, adding only two allegations: ¶ 2 (alleging that Fiserv has a regular and established place of business in Austin, Texas where it "stores property") and ¶ 14 ("Plaintiff is a non-practicing entity, with no products to mark. Plaintiff has plead all statutory requirements to obtain pre-suit damages. Further, all conditions precedent for recovery are met.")
[2] AuthWallet also refiled *AuthWallet, LLC v. Amarillo National Bank,* No. 7:24-cv-00064-DC-DTG after voluntarily dismissing its first lawsuit, which was also filed in the Waco Division in 2023. *See AuthWallet, LLC v. Amarillo National Bank,* No. 6:23-cv-140-DAE, ECF No. 26 (voluntarily dropped after Amarillo moved to dismiss on the same grounds set forth in this Motion). Amarillo has raised the same 101 grounds for dismissal as this Motion.

*see also* Ex. C (*AuthWallet, LLC v. Block, Inc.,* 21-cv-5463-LJL, 602 F. Supp. 3d 620 (S.D.N.Y. May 3, 2022)). The Federal Circuit's reasoning in *In re AuthWallet* applies with equal force here and dictates the same result—dismissal of AuthWallet's claims on the basis that its patent is invalid under § 101. Additionally, the Amended Complaint fails to allege a plausible infringement claim because there is not a single well-pleaded allegation of fact in either the Complaint or the claim chart exhibit that sufficiently identifies what allegedly infringes or how the limitations of even one of the asserted patent's 29 claims appear in an accused product.

## AUTHWALLET'S ALLEGATIONS

AuthWallet filed the Complaint on March 1, 2024, alleging that Fiserv "maintains, operates, and administers systems, products, and services that infringes [sic] one or more of claims 1-29" of United States Patent No. 8,099,368 ("'368 Patent"). Compl. at ¶ 9; *see* Dkt. 1-1 ('368 Patent). The barebones Complaint is less than five-page and purports to assert claims for direct, induced, contributory, and willful infringement. However, the Complaint does not identify any specific product or service of Fiserv that allegedly infringes and includes no factual allegations to support even one of AuthWallet's infringement claims. Instead, the Complaint merely references the claim chart exhibit and states that "[s]upport for the allegations of infringement" is provided therein. *See id.* at ¶ 10; *see also* Dkt. 1-2 (Compl. Ex. B, Claim Chart).

AuthWallet's claim chart, however, does little to clarify what exactly allegedly infringes or how. *See* Dkt. 1-2. The claim chart begins with the disclaimer that it "does not include, rely or refer to Google Pay, Samsung Payor [sic] Apple Pay, for infringement." Dkt. 1-2 at 2. The only Fiserv product identified in the chart is Carat, a broad, multifaceted commerce platform that includes a variety of debit and credit card acquisition services for large businesses. *See* Dkt. 1-2. AuthWallet never identifies a particular Carat service, much less the feature of a particular Carat

service, that allegedly infringes. And the chart provides few details describing how the unidentified but nevertheless accused feature of Carat allegedly infringes or embodies all of the limitations of either Claim 1 or Claim 21 of the '368 Patent.

Both Claim 1 and Claim 21 of the '368 Patent have eight distinct limitations, and both claim the following steps undertaken in carrying out the longstanding business practice of transacting a payment:

- receiving an authorization request for a transaction at a point of sale; retrieving customer information from memory;
- transmitting a transaction indication message to the customer's mobile phone; receiving a user selection;
- obtaining payment information; and
- providing it to the merchant along with the user's authorization of the transaction.

*See* '368 Patent at 19:23-65 and 21:21-22:21.

The claim chart recites the limitations of Claims 1 and 21 of the '368 Patent and includes a random patchwork of screenshots of various and distinct features of Fiserv's Carat platform. Indeed, there appears to be little rhyme or reason as to the Fiserv technology depicted in the chart for any particular limitation of Claim 1 or Claim 21. AuthWallet even repeatedly relies on Fiserv capabilities available in India rather than the Unites States. Dkt. 1-2 at 8 and 12 (addressing limitations of Claim 1); *id*. at 19 (addressing a limitation of Claim 21).

The Complaint's allegations regarding indirect infringement are similarly sparse. No facts are alleged to support the claims for contributory and induced infringement. *See* Dkt. 1. at ¶¶ 11-12. With respect to induced infringement, before "reserving the right to amend," Plaintiff asserts only the following boilerplate statement:

> Defendant has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so on how to use its products and services (e.g. processing financial transaction

3

>  data in a server including a processor and an associated storage area) such as to cause infringement [...] Moreover, Defendant has known of the '368 patent and the technology underlying it from at least the filing date of the lawsuit.

*Id.* at ¶ 11. To allege contributory infringement, Plaintiff simply repeats the same generic assertion and alleges that "there are no substantial noninfringing uses for Defendant's products and services." *Id.* at ¶ 12.

Although willfulness is not mentioned anywhere in the body of the Complaint, Plaintiff prays for a declaration that this case is "exceptional under 35 U.S.C. § 285" and award of attorneys' fees, treble damages for willful infringement, and prays for a permanent injunction. *Id.* at § V.

## LAW AND ARGUMENT

### I. Legal Standard

Rule 12(b)(6) requires dismissal when a plaintiff fails to allege sufficient facts to "state a claim to relief that is plausible on its face." *De La Vega v. Microsoft Corp.*, W-19-cv-00612-ADA, 2020 WL 3528411, at *2 (W.D. Tex. Feb. 11, 2020). A complaint must include sufficient facts that, if true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard requires the plaintiff to plead 'enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim].'" *Textile Computer Sys., Inc. v. Broadway Nat'l Bank*, No. 6:21-cv-1050-ADA, 2022 WL 3142367, at *1 (W.D. Tex. Aug. 5, 2022) *(*quoting *Twombly*, 550 U.S. at 545). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, "a plaintiff must plead specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (internal quotation marks omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Section 101 eligibility is appropriate for Rule 12(b)(6) consideration when the court can consider "sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice." *Wanker v. United States*, 146 Fed. Cl. 582, 595 (2020), *quoting Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring) (Section 101 inquiry is proper at the pleadings stage if it is apparent from the face of the patent that the claims are not directed to eligible subject matter).

## II. The asserted '368 Patent is directed to classic patent-ineligible subject matter under 35 U.S.C. § 101.

The '368 Patent is directed to the abstract idea and well-established business practice of "processing financial transaction data" in which a customer selects a payment instrument and authorizes a transaction at a point of purchase. '368 Patent at 19:23-27. Any doubt that the '368 Patent's subject matter is patent-ineligible was recently foreclosed by the Federal Circuit's decision in *In re AuthWallet, LLC*, affirming dismissal of AuthWallet's claims asserting a closely related patent, U.S. Patent No. 9,252,852, which were determined to be invalid under § 101. *See* Ex. A (*In re AuthWallet, LLC*, No. 2022-1842, 2023 U.S. App. LEXIS 11420, at *1 (Fed. Cir. May 10, 2023)); Ex. B ('852 Patent); Ex. C (*Authwallet, LLC v. Block, Inc.,* 21-cv-5463-LJL, 602 F. Supp. 3d 620 (S.D.N.Y. May 3, 2022)). Just as in *In re AuthWallet* and by the Federal Circuit's reasoning, dismissal is appropriate here.

### A. The Federal Circuit's decision demonstrates that determining patent ineligibility of the '368 claims now is particularly appropriate here.

"Section 101 disputes 'may be resolved on a Rule 12(b)(6) motion when there are no factual allegations that, taken as true, prevent resolving the eligibility as a matter of law.'" *In re*

5

*AuthWallet*, 2023 U.S. App. LEXIS 11420, at *6 (quoting *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020). "Failure to recite statutory subject matter is the sort of 'basic deficiency' that can, and should, 'be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). The focus of a Section 101 inquiry is on the asserted claims. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328-29 (Fed. Cir. 2020) (rejecting reliance on elements from specification in § 101 analysis). The Supreme Court's two-step *Alice* analysis first determines whether a patent claim is (1) directed to an unpatentable abstract idea and, (2) if so, considers whether the claim includes an inventive concept sufficient to "transform the nature of the claim into a patent-eligible application." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217, 219, 223 (2014). The facts in *Alice* are instructive as well. The Alice patent, like AuthWallet's '368 Patent, was directed to "intermediated settlement" (i.e., "exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement"), which the Court found to be nothing more than "a fundamental economic practice long prevalent in our system of commerce" and, therefore, directed to an abstract idea. *Id*. at 219, 223.

In cases involving related patents, such as here, "[a] decision on the invalidity of one patent may have preclusive effects on the invalidity of a second patent so long as 'the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity.'" *Grecia v. Cullen/Frost Bankers, Inc.*, Case No. 6:21-cv-16-ADA, Dkt. 49 at 2 (W.D. Tex., Sept. 23, 2021) (quoting *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). The patent claims need not be identical; rather, only the issue litigated must be the same. *Ohio Willow Wood*, 735 F.3d at 1342.

### B. The '368 Patent claims substantially the same subject matter as the '852 Patent, which the Federal Circuit held is patent ineligible.

The '368 Patent is directed to third-party intermediation of a transaction to reduce fraud. *See, e.g.*, '368 Patent at 12:3-7 (describing "intermediary service" for authenticating to reduce fraud). AuthWallet's '368 Patent and its '852 Patent are part of the same family and closely related. The invalidated '852 Patent issued from a continuation-in-part application based on the application from which the '368 Patent issued four years earlier:

> **Related U.S. Application Data**
> (63) Continuation-in-part of application No. 12/557,457, filed on Sep. 10, 2009, now Pat. No. 8,099,368.
> (60) Provisional application No. 61/112,749, filed on Nov. 8, 2008.

Ex. B at 1. The '852 Patent repeats the specification of the '368 Patent specification and adds new matter. *See Nat. Alts. Int'l, Inc. v. Iancu*, 904 F.3d 1375, 1383 n.7 (Fed. Cir. 2018) (explaining relationship between parent and continuation-in-part applications). In other words, the '368 Patent discloses even less than the '852 Patent. Thus, any suggestion that the '368 Patent covers subject matter not described in the '852 Patent is erroneous by definition. The substance of the '368 Patent is a subset of the '852 Patent. But of course, the focus is on the claims, and the '368 claims are substantially similar to the invalid claims of the '852 Patent.

Claim 1 of the '368 Patent is exemplary of all asserted claims as evidenced by the fact that AuthWallet alleges infringement of "one or more of claims 1-29" but charts only part of Claim 1 and Claim 21 as "support for the allegations of infringement." Dkt. 1 at ¶¶ 9, 11-12; Dkt. 1-2. Claim 1 recites a method for "processing a financial transaction" using generic computer components (a server, processor, and data storage). '368 Patent at 19:23-4. The steps are (i) receiving and authenticating an authorization request at a point of purchase; (ii) retrieving customer information including payment instruments (e.g., VISA, MasterCard); (iii) generating a

transaction message and sending it to the customer's mobile phone; (iv) receiving the customer's selection of desired payment type and authorization; and then (v) sending the customer's account information to the requester (i.e., the merchant) in two encrypted parts, one of which cannot be decrypted by the server.

The '852 Patent's claim 1, which AuthWallet did not dispute was exemplary of all claims in that patent, recites a method "for processing financial transaction data" using the same generic computer components ("a processor and a storage area") and many of the same conventional steps including receiving an authorization request at a point of purchase, transmitting transaction information to the customer's mobile phone, and receiving a customer's selection for payment. AuthWallet itself described the focus of the '852 claims as "a security protocol where [a] purchaser initiates a transaction, an authorization request is generated and sent to an intermediary service, the intermediary service generates an information request that is sent back to a mobile device, [and] the user of the mobile device in turn confirms the authorization request, typically by selecting a stored value item," *In re AuthWallet*, 2023 U.S. App. LEXIS 11420, at *7. The commercial transaction methods claimed in the '368 and '852 Patents substantially the same and differ in only two ways: (i) selection of stored value credit or discount in the '852 Patent—which the Federal Circuit found ineligible—and (ii) selection of payment type and use of encryption in the '368 Patent. But selecting a "stored value item" to apply to a purchase (Ex. B at 33:5) is substantially the same as selecting a "payment instrument" ('368 Patent at 19:40-3), and both are fundamental steps of a basic economic transaction. These immaterial differences do not change the abstract nature of the '368 Patent claims or transform them into patent-eligible subject matter.

### C.  The '368 Patent claims fail the two-part *Alice* test.

For the same reasons the Federal Circuit affirmed Judge Liman's decision on invalidity of the '852 claims, the '368 Patent is also directed to patent ineligible subject matter. The 368's claim describes managing a conventional sales transaction, the epitome of a fundamental business practice, which the Federal Circuit regularly has found patent ineligible. For example, *in In re Elbaum*, No. 2021-1719, 2021 U.S. App. LEXIS 26466, at *5 (Fed. Cir. Sep. 2, 2021), the Federal Circuit held that claims to a "method of providing information and allowing customers to utilize that information to engage in a commercial transaction" are directed to an abstract idea. In another recent case, the Federal Circuit held that claims "directed to a method for enabling a transaction between a user and a merchant, where the merchant is given a time-varying code instead of the user's secure (credit card) information" were directed to an abstract idea. *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. Aug. 26, 2021) (finding patent-ineligible a claim to "an electronic ID device configured to allow a user to select any one of a plurality of accounts associated with the user to employ in a financial transaction").

The minor differences between the AuthWallet patents' claims do not save the '368 Patent from abstractness or a finding of invalidity under § 101. Allowing a buyer to select a method of payment is an abstract idea. *Id.*; *Gammino v. AT&T Co.*, 127 F. Supp. 3d 264, 272 (D. Del. 2015). And using encryption/decryption is an abstract idea. *Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 333 (D. Del. 2015). The claims are not directed to any particular way of encrypting/decrypting data. Nor are they directed to an improvement in how the computer system itself operates.

The '368 Patent fares no better at step two. Like the '852 Patent's claims, the '368 Patent "does not speak to specific or technical problems and solutions but rather recites generic steps and

results." *In re AuthWallet, LLC* at *9 (quoting district court with approval). The '368 Patent's claims fail to recite an inventive concept and merely state well-known and conventional ways to perform authentication and apply a selected payment type. *Id*. at *9-10. Thus, the '368 Patent is invalid for the same reasons that the '852 Patent claims are invalid.

Fiserv should not be forced to litigate the same issue of patent eligibility that the Federal Circuit has already decided. If Authwallet continues to pursue its claims against Fiserv in the face of issue preclusion and clear invalidity under 35 U.S.C. § 101, this case will stand as exceptional and warrants an award of attorneys' fees. *See SAP Am., Inc. v. Investpic, LLC*, No. 3:16-CV-02689-K, 2018 U.S. Dist. LEXIS 27419, at *5 (N.D. Tex. Feb. 21, 2018) (finding case exceptional after § 101 determination where patent owner was on notice of eligibility problem but proceeded with litigation in effort to extract settlement).

## III. The Complaint fails to state a plausible claim for direct infringement.

The Complaint fails to state a claim for direct infringement because Plaintiff has not sufficiently identified a specific feature or service of Carat that it is accusing or alleged whether and how the limitation of even Claim 1 or Claim 21 of the '368 Patent are present in an accused feature or service of the Carat platform. "To state a viable direct infringement claim, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims." *Encoditech, LLC v. Citizen Watch Co. of Am., Inc*., No. SA018-cv-1335-XR, 2019 WL 2601347, at *3 (W.D. Tex. June 25, 2019). The detail required to plead direct infringement adequately depends on "the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Bot M8 LLC v. Sony Corp. of Am*., 4 F.4th 1342, 1353 (Fed. Cir. 2021).

The references to Carat in Plaintiff's chart are far from sufficient to identify the product, service, or feature of Carat that Plaintiff is accusing. As explained above, Fiserv's Carat platform is a broad solution that includes a variety of debit and credit card acquisition services. Carat provides certain card-not-present/card-on-file services, among others. Because Plaintiff fails to identify a specific customer-facing service provided by Carat, Fiserv has no way of knowing what exactly is allegedly infringing. In fact, Fiserv is unable to determine whether Plaintiff's claims accuse a Fiserv product or a third party product. Given the breadth of services of features provided by the Carat platform, Plaintiff's chart falls far short of providing enough information to put Fiserv on notice. *See LS Cloud Storage Techs, LLC v. Amazon.com, Inc.*, 1:22-cv-1167-RP, 2023 WL 2290291, at *5 (W.D. Tex Feb. 27, 2023). Furthermore, the allegations and images in the claim chart have little if any nexus to the limitations of the asserted claims of the '368 Patent. *See, e.g.,* Dkt. 1-2 at 8 (alleging that the "customer confirms a selected payment method via a received confirmation message from the customer" in relation to the limitation "authenticating the authorization request"). For example, for the second limitation of Claim 21 ("authenticating the authorization request" ('368 Patent at 19:31)), AuthWallet's claim chart depicts a screenshot relating to Fiserv Merchant Services—in India—stating "'Payment Successful' message appears on the customer's screen" and alleges that the "customer confirms a selected payment method via a received confirmation message from the customer." Dkt. 1-2 at 8. But neither AuthWallet's assertion regarding the customer nor the image regarding confirmation of payment has any relation to the limitation of "authenticating the authorization request." *Id*.

Furthermore, the claim chart fails to sufficiently allege that each of the limitations of Claim 1 and Claim 21 are practiced by an accuse product. As explained above, the claim chart repeatedly relies on capabilities available in India. Dkt. 1-2 at 8 and 12 (addressing second and sixth

11

limitations of Claim 1); *id*. at 19 (addressing the fourth limitation of Claim 21). It is well established that U.S. patent law does not operate extraterritorially to prohibit infringement abroad. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc*., 711 F.3d 1348, 1371 (Fed. Cir. 2013), *abrogated by Brumfield , Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854 (Fed. Cir.2024) (internal citations omitted); *see also Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 531 (1972), *superseded by statute,* Patent Law Amendments Acts of 1984, Pub. L. No. 98–622, 98 Stat. 3383 (codified at 35 U.S.C. § 271(f)), *as recognized in Microsoft Corp. v. AT & T Corp.,* 550 U.S. 437 (2007). Thus, there are no plausible allegations that the second and sixth limitations of Claim 1 or the fourth limitation of Claim 21 are practiced at all. It is a bedrock principle that "each and every" claim limitation be present to show direct infringement. *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005) ("Literal infringement requires that each and every limitation set forth in a claim appear in an accused product."). Because Plaintiff has not alleged that a Fiserv product's capabilities available in the United States practice all limitations of either Claim 1 or Claim 21, it has not sufficiently alleged direct infringement.

**II.     Plaintiff's claims for indirect & willful infringement also fail.**

Not only is Plaintiff's failure to sufficiently plead direct infringement fatal to all claims asserted in the Complaint, Plaintiff's failure to allege a single fact in the Complaint also requires dismissal of the claims for induced, contributory, and willful infringement.

1.     **Induced Infringement** - The Complaint fails to plead any facts that, if true, would establish that Fiserv induced infringement of the '368 Patent. To state a claim for induced infringement under § 271(b), "the complaint must plausibly plead that the defendant (1) knew of the patent; (2) knowingly induced the infringing acts; and (3) possessed a specific intent to

encourage another's infringement of the patent." *Textile Computer Sys.,* 2022 WL 3142367, at *4 (citing *Vita-Mix Corp. v. Basic Holdings, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009)).

Here, Plaintiff fails to plead the knowledge and specific intent elements. Plaintiff alleges only post-suit knowledge of the patent but does not claim that Fiserv knew of its alleged infringement. *See* Compl. at ¶ 11. ("Defendant has known of the '368 [P]atent and the technology underlying it from at least the filing date of the lawsuit."). "Mere knowledge of the Asserted Patents is not enough." *BillJCo, LLC v. Apple Inc*., No. 6:21-cv-00528-ADA, 2022 WL 299733, at *4 (W.D. Tex. Feb. 1, 2022); *see Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.,* No. 6:20-cv-008876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021) (holding that knowledge of a patent and knowledge of infringement are "distinct elements"). Given the absence of any allegation that Fiserv knew of its alleged infringement, Plaintiff's generic assertion that "Defendant has actively encouraged or instructed others […] on how to use its products and services" does not and cannot come close to a sufficient allegation of the "demanding" specific intent element. Compl. at ¶ 11; *Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns, LP*, No. 6:20-cv-01175-ADA, 2022 WL 299732, at *4 (W.D. Tex. Jan. 31, 2022) (explaining that the specific intent element of induced infringement requires more than simply "[i]nstructing others to perform an action 'such to cause infringement'"). Accordingly, Plaintiff's induced infringement claims should be dismissed.

**2.   Contributory Infringement -** Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc*., 575 U.S. 632, 639 (2015) (emphasis added). A plaintiff must also allege facts showing that the defendant knowingly provided components that have no "substantial non-infringing use" and that the defendant knew were "especially made or especially

adapted" to infringe the asserted patents. 35 U.S.C. § 271(c); *VoIP-Pal.com, Inc. v. Facebook, Inc.*, No. 6:21-cv-665, 2022 WL 1394550, at *2 (W.D. Tex. May 3, 2022). Here, the Complaint fails to sufficiently plead any of these essential elements of contributory infringement.

As demonstrated above, Plaintiff has not alleged that Fiserv had the requisite knowledge of infringement. Nor has Plaintiff identified a particular component of Fiserv's Carat product or sufficiently alleged that a component has no "substantial non-infringing use" and was "especially made or especially adapted" to infringe. Plaintiff's threadbare assertion that "there are no substantial noninfringing uses for Defendants products and services" is nothing more than an unsupported recitation of a legal element of contributory infringement. Compl. at ¶ 12. Plaintiff therefore fails to plead a plausible claim for contributory infringement.

3.  **Willful Infringement -** Plaintiff's prayer for a finding of willfulness and an award of treble damages is far from sufficient to satisfy the *Iqbal/Twombly* plausibility standard. *See* Compl. at § V(e-f). To allege willful infringement, a plaintiff to allege facts plausibly showing that the accused infringer "(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019). Aside from alleging post-suit knowledge of the patent, Plaintiff does not even attempt to allege any element of willful infringement. Accordingly, the claim should be dismissed.

## CONCLUSION

AuthWallet's claims fail because the '368 Patent claims patent-ineligible subject matter, and the '368 Patent is therefore invalid under § 101. In light Plaintiff's wasteful litigation strategy of filing the same claims multiple times to avoid resolution of this issue, an award of fees and/or

sanctions is appropriate. Furthermore, the Complaint fails to state claims for direct, contributory, induced, and willful infringement, and dismissal is therefore also warranted pursuant to Federal Rule of Civil Procedure 12(b)(6).

July 11, 2024                                                        Respectfully Submitted,

*/s/ Kelly Ransom*
Kelly Ransom
Texas State Bar No. 24109427
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6400
kelly.ransom@kellyhart.com

Cabrach J. Connor
Texas Bar No. 24036390
CONNOR LEE & SHUMAKER PLLC
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
Telephone:  (512) 646-2060
Facsimile:  (888) 587-1134
Cab@CLandS.com

***Attorneys for Defendant Fiserv, Inc.***

### CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on July 11, 2024.

*/s/ Kelly Ransom*