**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **AUTHWALLET, LLC,** | |
| **Plaintiff,** | **Civil Action No. 7:24-cv-00063-DC-DTG** |
| **v.** | |
| **FISERV, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**<u>FISERV, INC.'S MOTION TO DISMISS
AUTHWALLET'S FIRST AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ....................................................................................................II

**I.  THE AMENDED COMPLAINT** ........................................................................................3

    A.   Direct Infringement ..............................................................................................3

        1.  Claims 1 through 13 .................................................................................. 4

        2.  Claims 14 through 20 ................................................................................ 6

        3.  Claims 21 through 29 ................................................................................ 7

    B.   Indirect Infringement ..........................................................................................8

**II. LAW AND ARGUMENT** ..................................................................................................8

    A.   The asserted '368 Patent is directed to classic patent-ineligible subject matter under 35 U.S.C. § 101 ..................................................................................................8

        1.  The Federal Circuit's decision demonstrates that determining patent ineligibility of the '368 claims now is particularly appropriate here. ............................... 9

        2.  The '368 Patent claims substantially the same subject matter as the '852 Patent, which the Federal Circuit held is patent ineligible. ...................................... 10

        3.  The '368 Patent claims fail the two-part *Alice* test. ................................... 12

    B.   The Amended Complaint fails to state a plausible infringement claim. ........................14

        1.  AuthWallet has not sufficiently alleged direct infringement. ......................... 14

        2.  The Amended Complaint's claims for indirect and willful infringement also fail. ....... 18

**III. CONCLUSION** ...............................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018).................................................................................9

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014)...............................................................................10, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................14

*AuthWallet, LLC v. Amarillo National Bank*,
   Case No. 6-23-cv-00140 (W.D. Tex.) .............................................................1

*AuthWallet, LLC v. Amarillo National Bank*,
   No. 6:23-cv-140-DAE (W.D. Tex.).............................................................1, 2

*AuthWallet, LLC v. Amarillo National Bank*,
   No. 7:24-cv-00064-DC-DTG (W.D. Tex.) .....................................................1, 2

*AuthWallet, LLC v. Block, Inc.*,
   21-cv-5463-LJL, 602 F. Supp. 3d 620 (S.D.N.Y. May 3, 2022) .............................2

*AuthWallet, LLC v. CIBC Bank USA*,
   Case No. 6-23-cv-00141 (W.D. Tex.).............................................................1

*AuthWallet, LLC v. Cullen/Frost Bankers, Inc.*,
   Case No. 6-23-cv-00143 (W.D. Tex.) ...........................................................1

*AuthWallet, LLC v. First Citizens Bank*,
   Case No. 6-23-cv-00144 (W.D. Tex.) ...........................................................1

*AuthWallet, LLC v. Fiserv, Inc.*,
   No. 6:23-cv-00145-DAE (W.D. Tex.) ...........................................................1

*AuthWallet, LLC v. Woodforest National Bank*,
   Case No. 6-23-cv-00244 (W.D. Tex.) ...........................................................1

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................9, 14

*BillJCo, LLC v. Apple Inc.*,
   No. 6:21-cv-00528-ADA, 2022 WL 299733 (W.D. Tex. Feb. 1, 2022) ...............18

*Bilski v. Kappos*,
   561 U.S. 593 (2010)........................................................................................................8

*Brumfield, Tr. for Ascent Tr. v. IBG LLC*,
   97 F.4th 854 (Fed. Cir.2024) ......................................................................................16

*Commil USA, LLC v. Cisco Sys., Inc.*,
   575 U.S. 632 (2015)......................................................................................................19

*CTD Networks, LLC v. Google, LLC*,
   688 F.Supp.3d 490 (W.D. Tex. 2023).................................................................2, 14, 15

*De La Vega v. Microsoft Corp.*,
   W-19-cv-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) .................14

*Deepsouth Packing Co. v. Laitram Corp.*,
   406 U.S. 518 (1972)......................................................................................................16

*Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*,
   No. SA018-cv-1335-XR, 2019 WL 2601347 (W.D. Tex. June 25, 2019) ..............15

*Engelhard Industries, Inc. v. Research Instrumental Corp.*,
   324 F.2d 347 (9th Cir. 1963), cert. denied, 377 U.S. 923 (1964) ...........................17

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020).....................................................................................9

*Gammino v. AT&T Co.*,
   127 F. Supp. 3d 264 (D. Del. 2015).............................................................................13

*Grecia v. Cullen/Frost Bankers, Inc.*,
   Case No. 6:21-cv-16-ADA, Dkt. 49 (W.D. Tex., Sept. 23, 2021)...........................10

*In re AuthWallet, LLC*,
   No. 2022-1842, 2023 U.S. App. LEXIS 11420 (Fed. Cir. May 10, 2023)...............2, 9, 12, 13

*In re Elbaum*,
   No. 2021-1719, 2021 U.S. App. LEXIS 26466 (Fed. Cir. Sep. 2, 2021) ................12

*LifeNet Health v. LifeCell Corp.*,
   837 F.3d 1316 (Fed. Cir. 2016).....................................................................................17

*Microsoft Corp. v. AT & T Corp.*,
   550 U.S. 437 (2007)......................................................................................................16

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
   No. 6:20-cv-008876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) ............18

*Nat. Alts. Int'l, Inc. v. Iancu,*
    904 F.3d 1375 (Fed. Cir. 2018)................................................................11

*Ohio Willow Wood Co. v. Alps S., LLC,*
    735 F.3d 1333 (Fed. Cir. 2013)................................................................10

*Parity Networks, LLC v. Cisco Sys., Inc.,*
    No. 6:19-CV-00207ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019) ...........................20

*Personalized Media Commc'ns, LLC v. Amazon.com, Inc.,*
    161 F. Supp. 3d 325 (D. Del. 2015)................................................................13

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
    711 F.3d 1348 (Fed. Cir. 2013.................................................................13, 16

*Roberts Dairy Co. v. United States,*
    530 F.2d 1342 (Ct. Cl. 1976)................................................................17

*SAP Am., Inc. v. Investpic, LLC,*
    No. 3:16-CV-02689-K, 2018 U.S. Dist. LEXIS 27419 (N.D. Tex. Feb. 21, 2018) ...............13

*Textile Computer Sys., Inc. v. Broadway Nat'l Bank,*
    No. 6:21-cv-1050-ADA, 2022 WL 3142367 (W.D. Tex. Aug. 5, 2022) .........................14, 18

*Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns, LP,*
    No. 6:20-cv-01175-ADA, 2022 WL 299732 (W.D. Tex. Jan. 31, 2022) .............................19

*Tuchman v. DSC Commc'ns Corp.,*
    14 F.3d 1061 (5th Cir. 1994) ................................................................14

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)...........................................9

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.,*
    957 F.3d 1303 (Fed. Cir. 2020)................................................................9

*Universal Secure Registry LLC v. Apple Inc.,*
    10 F.4th 1342 (Fed. Cir. Aug. 26, 2021) ........................................................13

*V-Formation, Inc. v. Benetton Group SpA,*
    401 F.3d 1307 (Fed. Cir. 2005)................................................................15

*Vita-Mix Corp. v. Basic Holdings, Inc.,*
    581 F.3d 1317 (Fed. Cir. 2009)................................................................18

*VoIP-Pal.com, Inc. v. Facebook, Inc.,*
    No. 6:21-cv-665, 2022 WL 1394550 (W.D. Tex. May 3, 2022) ................................19

*Wanker v. United States*,
    146 Fed. Cl. 582 (2020) ..........................................................................................9

**Federal Statutes**

35 U.S.C. § 101 ...................................................................................2, 8, 9, 10, 13, 20

35 U.S.C. § 271(c) ....................................................................................................19

35 U.S.C. § 271(f) ....................................................................................................16

35 U.S.C. § 285 ..........................................................................................................8

**Federal Rules**

Fed. R. Civ. 12(b)(6) ...................................................................................8, 9, 14, 20

**Other Authorities**

Patent Law Amendments Acts of 1984, Pub. L. No. 98–622, 98 Stat. 3383.................................16

AuthWallet's Amended Complaint[1] is its fourth attempt to state plausible claims against Fiserv for infringing a patent directed to classic patent-ineligible subject matter. *See* Dkt. 1 (3/01/24 Compl.); Dkt. 16 (7/24/24 Am Compl.); Dkt. 17 (7/25/24 "Corrected" Am. Compl.); *AuthWallet, LLC v. Fiserv, Inc.*, No. 6:23-cv-00145-DAE (W.D. Tex.), Dkt. 1. AuthWallet first filed this lawsuit in the Waco Division in 2023 ("Waco Action") but voluntarily dismissed that case to avoid its litigation campaign designed to extort cost-of-defense settlements by a ruling on Fiserv's fully briefed motion to dismiss. Over a year after filing the Waco Action, AuthWallet recycled its claims and filed this case.[2]

After Fiserv moved to dismiss the Complaint in this case, AuthWallet attempted to dodge an adverse ruling on the same dispositive issues of patent-ineligibility and failure to state a plausible infringement claim raised herein by amending its pleading yet again.[3] Dkt. 14 (7/11/24 Motion to Dismiss); Dkt. 16; Dkt. 17. But the legal issues are insurmountable for AuthWallet, and the Amended Complaint is just as deficient as AuthWallet's previous complaints. The asserted '368 Patent is invalid because it claims patent-ineligible subject matter, and no artful pleading can change that. That issue was already decided by the Federal Circuit for a closely related patent. Ex.

---

[1] Unless otherwise stated, "Amended Complaint" refers to the "corrected" Amended Complaint filed on July 25, 2024 (Dkt. 17).

[2] *See AuthWallet, LLC v. Woodforest National Bank*, Case No. 6-23-cv-00244 (W.D. Tex.) (filed Apr. 03, 2023); *AuthWallet, LLC v. Amarillo National Bank*, Case No. 6-23-cv-00140 (W.D. Tex.) (filed Feb. 22, 2023); *AuthWallet, LLC v. CIBC Bank USA*, Case No. 6-23-cv-00141 (W.D. Tex.) (filed Feb. 22, 2023); *AuthWallet, LLC v. Cullen/Frost Bankers, Inc.*, Case No. 6-23-cv-00143 (W.D. Tex.) (filed Feb. 22, 2023); and *AuthWallet, LLC v. First Citizens Bank*, Case No. 6-23-cv-00144 (W.D. Tex.) (filed Feb. 22, 2023).

[3] AuthWallet also refiled *AuthWallet, LLC v. Amarillo National Bank,* No. 7:24-cv-00064-DC-DTG after voluntarily dismissing its first lawsuit against that defendant in the Waco Division in 2023. *See AuthWallet, LLC v. Amarillo National Bank,* No. 6:23-cv-140-DAE, ECF No. 26 (voluntarily dropped after Amarillo moved to dismiss on the same grounds set forth in this Motion). Amarillo has raised the same 101 grounds for dismissal as this Motion.

A (*In re AuthWallet, LLC*, No. 2022-1842, 2023 U.S. App. LEXIS 11420, at *1 (Fed. Cir. May 10, 2023) (affirming dismissal of AuthWallet's claims asserting U.S. Patent No. 9,252,852 ("'852 Patent") (Ex. B) on the basis that the patent is invalid under § 101); *see also* Ex. C (*AuthWallet, LLC v. Block, Inc.,* 21-cv-5463-LJL, 602 F. Supp. 3d 620 (S.D.N.Y. May 3, 2022)). The Federal Circuit's reasoning in *In re AuthWallet* applies with equal force here and dictates the same result—dismissal of AuthWallet's claims on the basis that its patent is invalid under § 101.

Additionally, the Amended Complaint fails to state a plausible infringement claim because AuthWallet has not and cannot identify any Fiserv product that meets all limitations of even one of the '368 Patent's 29 asserted claims. AuthWallet's takes a kitchen sink approach to alleging infringement in the Amended Complaint by mixing and matching features of various Fiserv products and platforms in its allegations regarding the '368 Patent's asserted claims. But the law is clear that "[i]nfringement cannot be shown by a muddled hash of elements from different products." *CTD Networks, LLC v. Google, LLC*, 688 F.Supp.3d 490, 499 (W.D. Tex. 2023), *appeal dismissed*, 2023-2428, 2024 WL 2587917 (Fed. Cir. May 24, 2024) (internal quotations omitted). Thus, like its previous complaints, the Amended Complaint fails to sufficiently allege infringement and it should therefore be dismissed.

Notably, the same issues raised here were previously presented to Judge Ezra in the Waco Action and to this Court by Fiserv's Motion to Dismiss the Complaint, highlighting the wastefulness of AuthWallet's litigation strategy and warranting dismissal with prejudice.[4]

---

[4]AuthWallet also refiled *AuthWallet, LLC v. Amarillo National Bank,* No. 7:24-cv-00064-DC-DTG after voluntarily dismissing its first lawsuit, which was also filed in the Waco Division in 2023. *See AuthWallet, LLC v. Amarillo National Bank,* No. 6:23-cv-140-DAE, ECF No. 26 (voluntarily dropped after Amarillo moved to dismiss on the same grounds set forth in this Motion). Amarillo has raised the same § 101 grounds for dismissal as this Motion and also moved to strike, in response to AuthWallet's Second Amended Complaint.

# I.    <u>THE AMENDED COMPLAINT</u>

AuthWallet alleges that Fiserv "maintains, operates, and administers systems, products, and services that infringes [sic] one or more of claims 1-29" of United States Patent No. 8,099,368 ("'368 Patent"). Dkt. 17 at ¶ 9; *see* Dkt. 17-1 ('368 Patent). The five-page, barebones Amended Complaint attempts to assert claims for direct, induced, contributory, and willful infringement but alleges no facts to support those claims. Instead, the Amended Complaint refers to a claim chart exhibit, which AuthWallet claims provides "[s]upport for the allegations of infringement." Dkt. 17 at ¶ 10.  But the chart provides a confusing array of unconnected and disparate snippets of information about a range of different products and services that Fiserv offers to different markets. Though the new claim chart is three times longer than AuthWallet's previous charts, the new material and allegations only convolute and compound the prior complaints' deficiencies, which AuthWallet cannot cure. *Compare id.* with Dkt. 1-2.[5] Indeed, the allegations in the chart do not accuse any particular Fiserv product of meeting all limitations of any claim of the '368 Patent. Dkt. 17-2 (Am. Compl. Ex. B, Claim Chart).

## A.    **Direct Infringement**

AuthWallet attempts to allege direct infringement of Claims 1, 14, and 21, as well as the twenty-six dependent claims, of the '368 Patent as follows:

---

[5] The Amended Complaint's claim chart includes a list of 19 definitions (none of which mention Fiserv), two prior art diagrams, and 13 exhibits with general information regarding Fiserv, the history of PAN Tokenization, and Fiserv's use of PAN Tokenization. *Id.* at 1-24. But these new preliminary materials are not tethered to the limitations of the '368 Patent's claims.

1.      **Claims 1 through 13**

Claim 1 of the '368 Patent claims a "method for processing financial transaction data in a server including a processor and an associated storage area" and has eight distinct limitations requiring the following steps of the longstanding business practice of transacting a payment:

- receiving an authorization request for a transaction at a point of sale; retrieving customer information from memory;
- transmitting a transaction indication message to the customer's mobile phone; receiving a user selection;
- obtaining payment information; and
- providing it to the merchant along with the user's authorization of the transaction.

*See* '368 Patent at 19:23-65 (claiming a method for processing financial transaction data in a server including a processor and an associated storage area).

The claim chart recites the limitations of Claim 1 but does not allege that a single Fiserv product performs each of those steps. Instead, AuthWallet alleges that "Fiserv has an extensive array of financial products" and processes financial transaction data using processors. Then AuthWallet identifies **Notifi Alerts**, a solution that Fiserv sells to financial institutions and that provides real-time alerts to customers, in connection with the fourth and fifth steps of Claim 1. *Id.* at 25, 29-30. For claim steps one through three and six through seven, AuthWallet identifies **Development Studio**, which is not a product per se but rather a development platform supporting third party or client development of custom applications using a wide range of Fiserv products and services to meet their particular needs. *Id.* at 26-28, 31-32. The remaining allegations regarding Claim 1 generally refer to "Fiserv's systems" and "Fiserv services" and assert general information regarding PAN authorization and transmission protocols. *Id.* at 33-36 (addressing the seventh and

eighth steps of Claim 1). AuthWallet makes no allegation connecting Notifi Alerts and the Fiserv Development Studio.

The allegations regarding Claim 1's dependent claims (Claims 2 through 13) are similarly scattered and identify a number of other Fiserv products that are not even mentioned in the allegations regarding Claim 1. *See id.* at 37 (addressing Claim 2 ("the method of Claim 1, wherein the requester is an acquirer") and depicting an image referring to Fiserv as a "merchant acquirer" without alleging Fiserv is the requester or acquirer or accusing any Fiserv product); *id.* at 38 (addressing Claim 3 ("the method of Claim 1, wherein the requester is an issuing institution") but alleging only that Fiserv issues and produces cards on behalf of banks and not alleging that Fiserv is an "issuing institution"); *id.* at 39 (addressing Claim 4 but alleging nothing about Fiserv); *id.* at 40 (addressing Claim 5 but asserting allegations regarding PAN transmission protocols rather than Fiserv); *id.* at 41 (addressing Claim 6 and accusing a Fiserv **Commerce Hub** feature that generates HMAC authentication); *id.* at 42 (addressing Claim 7 and accusing features of a **card management solution**); *id.* at 43 (addressing Claim 8 but asserting allegations regarding the increase of PINless transaction approval limits on the Star debit payments network); *id.* at 44 (addressing Claim 9 ("the method of claim 1, wherein the specified response is determined by the information identifying the point of purchase") and referencing Fiserv's **Risk Mitigation and Compliance solution set** without alleging how any particular solution provides a specific response determined by information identifying a point of purchase); *id.* at 45 (addressing Claim 10 but only alleging Fiserv solutions may use verification CVV without accusing any particular solution); *id.* at 46 (addressing Claim 11 and accusing **Commerce Hub** card verification services); *id.* at 47 (addressing Claim 12 but accusing **third-party Clover's product** and alleging nothing about Fiserv); *id.* at 48 (addressing Claim 13 and accusing Fiserv's fraud mitigation solution for **Carat**).

The allegations regarding Claims 1 through 13 identify at least six different Fiserv products or platforms, only two of which are referenced in relation to the only independent claim, Claim 1.

## 2.    Claims 14 through 20

Claim 14 of the '368 Patent is an apparatus claim describing a "system for processing financial transaction data" with eight limitations. *See* '368 Patent at 20:37-21:9. The claimed system is comprised of a processor, storage component, and various authentication, management, and communication modules. *Id.* AuthWallet completely ignores the first limitation of Claim 14 (a processor) and attempts to address the second limitation (a storage component) by asserting that Fiserv "vaults" account or card details and pasting images of information regarding Fiserv's Connected Commerce service ("**uComm**") from Fiserv's online development environment. Dkt. 17-2 at 49. UComm is only mentioned again in the allegations regarding Claim 14's third limitation and is not alleged to meet any of the claim's other limitations. *Id.* at 50. However, a number of other Fiserv solutions and products are referenced in those allegations, including (1) features of Fiserv's **Commerce Hub** product (*id.* at 51), (2) **Notifi Alerts** (*id.* at 53), and (3) **Credit Select**, an integrated full service consumer and business credit card solution (*id.* at 55). AuthWallet also repeats the same general allegations regarding the wide range of products and services offered by Fiserv and regarding PAN security protocols that appear throughout the claim chart.[6]

With respect to Claim 14's dependent claims, Claims 15 through 20, AuthWallet accuses "various products and services" offered by Fiserv but does not allege that any only Fiserv product meets the limitations of both Claim 14 and any dependent claim. *See id.* at 56-57 (addressing

---

[6] *See* Dkt. 17-2 at 54 (addressing the seventh limitation of claim 14 and asserting that "Fiserv is the largest and most dominant card issuer in the USA. Thus,…their card issuance is massive. Consequently, the card PAN versus the remaining card information needs protected.")

Claims 15 and 16 and accusing **Portico**, a product that Fiserv provides to credit unions); *id*. at 58 (addressing Claim 17 and accusing **CommerceHub** security features); *id*. 59 (addressing Claim 18 without identifying the relevant "initial authorization request" or encrypted sections and instead asserting general allegations regarding Fiserv and "any entity handling a PAN"); *id*. at 60 (addressing Claim 19 and accusing Fiserv's **Carat platform**, a broad solution that includes a variety of debit and credit card acquisition services); *id*. at 61 (addressing Claim 20 without pointing to any system with capabilities relevant to the claim's limitations).

### 3. Claims 21 through 29

Like Claim 1, Claim 21 of the '368 Patent details a "method for processing financial transaction data in a server" but the server relevant to Claim 21 includes "a processor and a memory." Dkt. 17-1 at 21:21-22:21. AuthWallet does not accuse any Fiserv product of performing each of Claim 21's eight steps. Instead, AuthWallet generally accuses "Fiserv's services" (Dkt. 17-2 at 62) and refer to various Fiserv platforms, solutions, and features, including Fiserv's **Carat platform** (*id*. at 62, 69), programmable payment features such as **FinTechSwitch** (*id*. at 63-64, 68, 70), **Notifi Alerts** (*id*. at 65), and the **"Card Info Lookup" features of Fiserv's IPG** (internet payment gateway) **product** (*id*. at 67). Like the allegations regarding the '368 Patent's other claims, the screenshots in the claim chart relating to the limitations of Claim 21 have little if any relation to the claim's relevant limitation and even include a screenshot regarding merchant services available in India. *Id*. at 66.

AuthWallet's allegations regarding Claim 21's dependent claims, Claims 22 through 29, do not accuse any single Fiserv product of performing all limitations of any claim. *See id*. at 62-70 (addressing Claim 21); *id*. at 71-78 (addressing Claims 22 through 29). With respect to Claims 22 and 23, AuthWallet attempts to accuse certain card management features of Fiserv's **Portico**

product for credit unions. *Id.* at 71-72. Next, it accuses **Notifi Alerts** in relation to Claim 24. *Id.* at 73. And the allegations regarding Claims 25 through 29 do not identify any Fiserv product. *Id.* at 74 (addressing Claim 25 without accusing any particular product or service of Fiserv); *id.* at 76-77 (addressing Claims 27-29); *see also id.* at 75 (addressing Claim 26 and referring to products that tie to NFC payments without asserting allegations accusing any such products of infringing).

## B.    Indirect Infringement

AuthWallet attempts to allege induced infringement with the following boilerplate allegation:

> Defendant actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g. processing financial transaction data in a server including a processor and an associated storage area) such as to cause infringement [...] Moreover, Defendant has known of the '368 patent and the technology underlying it from at least the filing date of the lawsuit.

*Id.* at ¶ 11. It then attempts to assert a claim for contributory infringement by repeating the same allegation and asserting that "there are no substantial noninfringing uses for Defendant's products and services." *Id.* at 12. Though willfulness is not mentioned anywhere in the Amended Complaint, AuthWallet prays for a declaration that this case is "exceptional under 35 U.S.C. § 285" and an award of attorneys' fees, treble damages for willful infringement, and a permanent injunction. *Id.* at § VI. No facts are alleged to support these conclusory allegations.

## II.    LAW AND ARGUMENT

## A.    The asserted '368 Patent is directed to classic patent-ineligible subject matter under 35 U.S.C. § 101.

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Section 101 eligibility is appropriate for Rule 12(b)(6) consideration when the court can consider "sources properly considered on a motion to dismiss, such as the complaint, the

patent, and materials subject to judicial notice." *Wanker v. United States*, 146 Fed. Cl. 582, 595 (2020), *quoting Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring) (explaining that a § 101 inquiry is proper at the pleadings stage if it is apparent from the face of the patent that the claims are not directed to eligible subject matter).

The '368 Patent is directed to the abstract idea and well-established business practice of "processing financial transaction data" in which a customer selects a payment instrument and authorizes a transaction at a point of purchase. '368 Patent at 19:23-27. Any doubt that the '368 Patent's subject matter is patent-ineligible was recently foreclosed by the Federal Circuit's decision in *In re AuthWallet, LLC*, No. 2022-1842, 2023 U.S. App. LEXIS 11420, at *1 (Fed. Cir. May 10, 2023), affirming dismissal of AuthWallet's claims asserting a closely related patent, U.S. Patent No. 9,252,852, which were determined to be invalid under § 101. *See* Exs. A-C. Just as in *In re AuthWallet* and by the Federal Circuit's reasoning, dismissal is appropriate here.

### 1. The Federal Circuit's decision demonstrates that determining patent ineligibility of the '368 claims now is particularly appropriate here.

"Section 101 disputes 'may be resolved on a Rule 12(b)(6) motion when there are no factual allegations that, taken as true, prevent resolving the eligibility as a matter of law.'" *In re AuthWallet*, 2023 U.S. App. LEXIS 11420, at *6 (quoting *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020). "Failure to recite statutory subject matter is the sort of 'basic deficiency' that can, and should, 'be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring) (quoting *Twombly*, 550 U.S. 544, 558 (2007)).

The focus of a § 101 inquiry is on the asserted claims. *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328-29 (Fed. Cir. 2020) (rejecting reliance on elements from

specification in § 101 analysis). The Supreme Court's two-step *Alice* analysis first determines whether a patent claim is (1) directed to an unpatentable abstract idea and, (2) if so, considers whether the claim includes an inventive concept sufficient to "transform the nature of the claim into a patent-eligible application." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217, 219, 223 (2014). The facts in *Alice* are instructive as well. The *Alice* patent, like AuthWallet's '368 Patent, was directed to "intermediated settlement" (i.e., "exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement"), which the Court found to be nothing more than "a fundamental economic practice long prevalent in our system of commerce" and, therefore, directed to an abstract idea. *Id*. at 219, 223.

In cases involving related patents, such as here, "[a] decision on the invalidity of one patent may have preclusive effects on the invalidity of a second patent so long as 'the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity.'" *Grecia v. Cullen/Frost Bankers, Inc*., Case No. 6:21-cv-16-ADA, Dkt. 49 at 2 (W.D. Tex., Sept. 23, 2021) (quoting *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)). The patent claims need not be identical; rather, only the issue litigated must be the same. *Ohio Willow Wood*, 735 F.3d at 1342. Such is the case with all asserted claims here.

2.     **The '368 Patent claims substantially the same subject matter as the '852 Patent, which the Federal Circuit held is patent ineligible.**

The '368 Patent is directed to third-party intermediation of a transaction to reduce fraud. *See, e.g*., '368 Patent at 12:3-7 (describing "intermediary service" for authenticating to reduce fraud). AuthWallet's '368 Patent and its '852 Patent are part of the same family and closely related. The invalidated '852 Patent issued from a continuation-in-part application based on the

application from which the '368 Patent issued four years earlier:

**Related U.S. Application Data**

(63)  Continuation-in-part of application No. 12/557,457, filed on Sep. 10, 2009, now Pat. No. 8,099,368.

(60)  Provisional application No. 61/112,749, filed on Nov. 8, 2008.

Ex. B at 1. The '852 Patent repeats the specification of the '368 Patent specification and adds new matter. *See Nat. Alts. Int'l, Inc. v. Iancu*, 904 F.3d 1375, 1383 n.7 (Fed. Cir. 2018) (explaining relationship between parent and continuation-in-part applications). In other words, the '368 Patent discloses even less than the '852 Patent. Thus, any suggestion that the '368 Patent covers subject matter not described in the '852 Patent is erroneous by definition. The substance of the '368 Patent is a subset of the '852 Patent. But of course, the focus is on the claims, and the '368 claims are substantially similar to the invalid claims of the '852 Patent.

Claim 1 of the '368 Patent is exemplary of all asserted claims and recites a method for "processing a financial transaction" using generic computer components (a server, processor, and data storage). '368 Patent at 19:23-4. The steps are (i) receiving and authenticating an authorization request at a point of purchase; (ii) retrieving customer information including payment instruments (e.g., VISA, MasterCard); (iii) generating a transaction message and sending it to the customer's mobile phone; (iv) receiving the customer's selection of desired payment type and authorization; and then (v) sending the customer's account information to the requester (i.e., the merchant) in two encrypted parts, one of which cannot be decrypted by the server.

The '852 Patent's claim 1, which AuthWallet did not dispute was exemplary of all claims in that patent, recites a method "for processing financial transaction data" using the same generic computer components ("a processor and a storage area") and many of the same conventional steps including receiving an authorization request at a point of purchase, transmitting transaction

11

information to the customer's mobile phone, and receiving a customer's selection for payment. AuthWallet itself described the focus of the '852 claims as "a security protocol where [a] purchaser initiates a transaction, an authorization request is generated and sent to an intermediary service, the intermediary service generates an information request that is sent back to a mobile device, [and] the user of the mobile device in turn confirms the authorization request, typically by selecting a stored value item," *In re AuthWallet*, 2023 U.S. App. LEXIS 11420, at *7. The commercial transaction methods claimed in the '368 and '852 Patents are substantially the same and differ in only two ways: (i) selection of stored value credit or discount in the '852 Patent—which the Federal Circuit found ineligible—and (ii) selection of payment type and use of encryption in the '368 Patent. But selecting a "stored value item" to apply to a purchase (Ex. B at 33:5) is substantially the same as selecting a "payment instrument" ('368 Patent at 19:40-3), and both are fundamental steps of a basic economic transaction. These immaterial differences do not change the abstract nature of the '368 Patent claims or transform them into patent-eligible subject matter.

### 3. The '368 Patent claims fail the two-part *Alice* test.

For the same reasons the Federal Circuit affirmed Judge Liman's decision on invalidity of the '852 claims, the '368 Patent is also directed to patent ineligible subject matter. The 368's claims describe managing a conventional sales transaction, the epitome of a fundamental business practice, which the Federal Circuit regularly has found patent ineligible. For example, *in In re Elbaum*, No. 2021-1719, 2021 U.S. App. LEXIS 26466, at *5 (Fed. Cir. Sep. 2, 2021), the Federal Circuit held that claims to a "method of providing information and allowing customers to utilize that information to engage in a commercial transaction" are directed to an abstract idea. In another recent case, the Federal Circuit held that claims "directed to a method for enabling a transaction between a user and a merchant, where the merchant is given a time-varying code instead of the

user's secure (credit card) information" were directed to an abstract idea. *Universal Secure Registry LLC v. Apple Inc*., 10 F.4th 1342, 1346 (Fed. Cir. Aug. 26, 2021) (finding patent-ineligible a claim to "an electronic ID device configured to allow a user to select any one of a plurality of accounts associated with the user to employ in a financial transaction").

The minor differences between the AuthWallet patents' claims do not save the '368 Patent from abstractness or a finding of invalidity under § 101. Allowing a buyer to select a method of payment is an abstract idea. *Id*.; *Gammino v. AT&T Co*., 127 F. Supp. 3d 264, 272 (D. Del. 2015). And using encryption/decryption is an abstract idea. *Personalized Media Commc'ns, LLC v. Amazon.com, Inc*., 161 F. Supp. 3d 325, 333 (D. Del. 2015). The claims are not directed to any particular way of encrypting/decrypting data. Nor are they directed to an improvement in how the computer system itself operates.

The '368 Patent fares no better at step two. Like the '852 Patent's claims, the '368 Patent "does not speak to specific or technical problems and solutions but rather recites generic steps and results." *In re AuthWallet, LLC* at *9 (quoting district court with approval). The '368 Patent's claims fail to recite an inventive concept and merely state well-known and conventional ways to perform authentication and apply a selected payment type. *Id*. at *9-10. Thus, the '368 Patent is invalid for the same reasons that the '852 Patent claims are invalid.

Fiserv should not be forced to litigate the same issue of patent eligibility that the Federal Circuit has already decided. AuthWallet's continued to pursuit of claims against Fiserv in the face of issue preclusion and clear invalidity under 35 U.S.C. § 101, makes this case exceptional and warrants an award of attorneys' fees. *See SAP Am., Inc. v. Investpic, LLC*, No. 3:16-CV-02689-K, 2018 U.S. Dist. LEXIS 27419, at *5 (N.D. Tex. Feb. 21, 2018) (finding case exceptional after §

101 determination where patent owner was on notice of eligibility problem but proceeded with litigation in effort to extract settlement).

**B.    The Amended Complaint fails to state a plausible infringement claim.**

Rule 12(b)(6) requires dismissal when a plaintiff fails to allege sufficient facts to "state a claim to relief that is plausible on its face." *De La Vega v. Microsoft Corp.*, W-19-cv-00612-ADA, 2020 WL 3528411, at *2 (W.D. Tex. Feb. 11, 2020). A complaint must include sufficient facts that, if true, to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard requires the plaintiff to plead 'enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim].'" *Textile Computer Sys., Inc. v. Broadway Nat'l Bank*, No. 6:21-cv-1050-ADA, 2022 WL 3142367, at *1 (W.D. Tex. Aug. 5, 2022) *(*quoting *Twombly*, 550 U.S. at 545). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, "a plaintiff must plead specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (internal quotation marks omitted). And, as explained further below, allegations "mixing and matching between different accused products" cannot state a plausible infringement claim, "as [i]nfringement cannot be shown by a muddled hash of elements from different products." *CTD Networks,* 688 F.Supp.3d at 499 (W.D. Tex. 2023) (internal citations and quotations omitted).

### 1.    AuthWallet has not sufficiently alleged direct infringement.

AuthWallet's patchwork of allegations do not accuse any Fiserv product of meeting all limitations of even one of the '368 Patent's 29 asserted claims and therefore fail to state a plausible claim for direct infringement. "To state a viable direct infringement claim, a plaintiff must plead

facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims." *Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, No. SA018-cv-1335-XR, 2019 WL 2601347, at *3 (W.D. Tex. June 25, 2019). It is a bedrock principle that "each and every" claim limitation be present to show direct infringement. *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005) ("Literal infringement requires that each and every limitation set forth in a claim appear in an accused product."). "[A] plaintiff does not satisfy this [pleading] requirement by mixing and matching between different accused products in its claim charts, as [i]nfringement cannot be shown by a muddled hash of elements from different products." *CTD Networks*, 688 F.Supp.3d at 499 (W.D. Tex. 2023).

Here, AuthWallet attempts to cobble together direct infringement claims "by mixing and matching between different accused products in its claim chart[]." *CTD Networks, LLC v. Google, LLC*, 688 F.Supp.3d at 499 (W.D. Tex. 2023). The allegations regarding the '368 Patent's Claim 1 accuse a variety of Fiserv products but do not accuse any single product of performing each of the claims eight required steps. AuthWallet accuses the Notifi Alert solution of performing the fourth and fifth steps of Claim 1 but no others. *See* Dkt. 17-2 at 29-30. In fact, AuthWallet does not accuse any Fiserv product of perfuming the other steps of Claim 1 and instead only alleges information regarding PAN transmission protocols or generically refers to Fiserv's "extensive array of financial products" without identifying any particular Fiserv product. *Id.* at 25, 33-36. Though screenshots of Fiserv's Development Studio are also depicted under the language of a number of Claim 1's limitations, those images do not accuse any Fiserv product because Development Studio is a development environment where merchants, banks, credit unions, and other Fiserv customers can explore a wide range of Fiserv products and solutions relevant for their particular sector. *Id.* at 26-28, 31-32. Development Studio is not a product. Because AuthWallet

does not allege that any Fiserv product performs each of Claim 1's eight steps, the Amended Complaint fails to state a plausible claim for direct infringement of Claim 1.

AuthWallet's allegations regarding Claims 2 through 29 of the '368 Patent also fail to accuse any single Fiserv product of meeting each of the limitations of any of the '368 Patent's other claims:

- **Dependent Claims 2-13 -** AuthWallet's allegations regarding Claim 1's dependent claims, Claims 2 through 13, accuse (1) Commerce Hub card verification services, (2) the Portico solution for credit unions, (3) a fraud mitigation solution for the Carat platform, (4) a risk mitigation and compliance solution set, and (5) a product of a third-party Clover Networks. *Id*. at 37-48.

- **Claim 14**[7] - AuthWallet alleges nothing regarding the first limitation of Claim 14 ("a processor") but accuses a number of different Fiserv products, services, and solutions in the allegations regarding the other limitations of Claim 14, including (1) Fiserv's uComm service, (2) features of the Commerce Hub product, (3) Notifi Alerts, (4) Credit Select consumer and business credit card solution, and (5) Fiserv card issuance services. *Id*. at 49-55.

- **Dependent Claims 15-20** - The allegations regarding dependent Claims 15 through 20 accuse (1) Fiserv's Portico product for credit unions, (2) CommerceHub security features, and (3) features of the Carat platform. *Id*. at 56-61.

- **Claim 21**[8] - AuthWallet does not allege that any product performs each of the eight steps of Claim 21 and instead accuses (1) Fiserv's Carat platform, (2) programmable payment features such as FinTechSwitch, (3) Notifi Alerts, and (4) the "Card Info Lookup" feature of Fiserv's IPG product. *Id*. at 62-70.

---

[7] The Amended Complaint also fails to state a claim for infringement of Claim 14 of the '368 Patent because AuthWallet does not allege anything regarding the first limitation of Claim 14 ("a processor.

[8] The claim for infringement of Claim 21 of the '368 Patent also fails because AuthWallet only accuses Fiserv capabilities in India of performing the claim's fourth step. Dkt. 17-2 at 66. U.S. patent law does not operate extraterritorially to prohibit infringement abroad. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc*., 711 F.3d 1348, 1371 (Fed. Cir. 2013), *abrogated by Brumfield, Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854 (Fed. Cir.2024) (internal citations omitted); *see also Deepsouth Packing Co. v. Laitram Corp*., 406 U.S. 518, 531 (1972), superseded by statute, Patent Law Amendments Acts of 1984, Pub. L. No. 98–622, 98 Stat. 3383 (codified at 35 U.S.C. § 271(f)), as recognized in *Microsoft Corp. v. AT & T Corp*., 550 U.S. 437 (2007).

- **Dependent Claims 22-29** - The allegations regarding Claims 22 through 24 accuse Fiserv's Portico product for credit unions and Notifi Alerts. *Id*. at 71-73. AuthWallet's general allegations regarding Claims 25 through 29 do not identify, much less accuse, any Fiserv product. *Id*. at 74-78.

Because no Fiserv product is alleged to practice all limitations of any of the '368 Patent's claims, the Amended Complaint does not state a plausible claim for direct infringement. *See Roberts Dairy Co. v. United States*, 530 F.2d 1342, 1354 (Ct. Cl. 1976) ("It is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized.") (citing *Engelhard Industries, Inc. v. Research Instrumental Corp*., 324 F.2d 347 (9th Cir. 1963), cert. denied, 377 U.S. 923 (1964)); *see also LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1325 (Fed. Cir. 2016) ("Direct infringement "requires that each and every limitation set forth in a claim appear in an accused product.").

Notably, throughout the Amended Complaint AuthWallet repeats allegations detailing the wide range of financial technology services and products Fiserv offers to various types of customers in the financial industry. *See* Dkt. 17-2 at 24 ("Fiserv, Inc. is a leading global provider of financial services technology…"); *id*. at 25 ("Fiserv has an extensive array of financial products" and "processes an extensive amount of financial transaction data"); *id*. at 37 ("Fiserv was the largest non-bank merchant acquirer in 2022…"); *id*. at 54 ("Fiserv is the largest and most dominant card issuer in the USA."); *accord id*. at 55, 59; *id*. at 62 (describing the range of services offered by Fiserv). These general assertions regarding Fiserv do not push the Amended Complaint any closer to stating a plausible infringement claim because they do not accuse any particular product of infringing the '368 Patent's claims. However, the allegations do make it clear that AuthWallet is well aware of the fact that Fiserv offers a variety of distinct products and solutions. In other words, AuthWallet has not simply overlooked the fact that the Fiserv products identified in the claim chart are distinct, have distinct function, features, and uses, and are provided to

different types of Fiserv customers across the financial industry. AuthWallet's attempt to salvage its claims to extort a cost-of-defense by amending its pleading yet again by amending its pleading to add allegations that only convolute rather than support the frivolous infringement claims against Fiserv merits dismissal with prejudice and an award of fees and/or sanctions.

  **2. The Amended Complaint's claims for indirect and willful infringement also fail.**

Not only do AuthWallet's indirect and willful infringement claims fail because direct infringement is not sufficient pleaded, the claims also fail because they are not supported by any allegations of fact.

  **a. Induced Infringement** - The Amended Complaint fails to plead any facts that, if true, could show that Fiserv induced infringement of the '368 Patent. To state a claim for induced infringement under § 271(b), "the complaint must plausibly plead that the defendant (1) knew of the patent; (2) knowingly induced the infringing acts; and (3) possessed a specific intent to encourage another's infringement of the patent." *Textile Computer Sys.,* 2022 WL 3142367, at *4 (citing *Vita-Mix Corp. v. Basic Holdings, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009)).

  Here, AuthWallet fails to plead the knowledge and specific intent elements. Only post-suit knowledge of the patent is alleged and there is no allegation that Fiserv knew of its alleged infringement. *See* Dkt. 17 at ¶ 11. ("Defendant has known of the '368 [P]atent and the technology underlying it from at least the filing date of the lawsuit."). "Mere knowledge of the Asserted Patents is not enough." *BillJCo, LLC v. Apple Inc*., No. 6:21-cv-00528-ADA, 2022 WL 299733, at *4 (W.D. Tex. Feb. 1, 2022); *see Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.,* No. 6:20-cv-008876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021) (holding that knowledge of a patent and knowledge of infringement are "distinct elements"). Given the absence of any allegation that Fiserv knew of its alleged infringement, the generic

assertion that "Defendant has actively encouraged or instructed others […] on how to use its products and services" does not and cannot come close to a sufficient allegation of the "demanding" specific intent element. Dkt. 17 at ¶ 11; *Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns, LP*, No. 6:20-cv-01175-ADA, 2022 WL 299732, at *4 (W.D. Tex. Jan. 31, 2022) (explaining that the specific intent element of induced infringement requires more than simply "[i]nstructing others to perform an action 'such to cause infringement'"). Accordingly, AuthWallet's induced infringement claim should be dismissed.

       **b. Contributory Infringement -** Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) (emphasis added). A plaintiff must also allege facts showing that the defendant knowingly provided components that have no "substantial non-infringing use" and that the defendant knew were "especially made or especially adapted" to infringe the asserted patents. 35 U.S.C. § 271(c); *VoIP-Pal.com, Inc. v. Facebook, Inc.*, No. 6:21-cv-665, 2022 WL 1394550, at *2 (W.D. Tex. May 3, 2022). Here, the Amended Complaint fails to sufficiently plead any of these essential elements of contributory infringement.

       AuthWallet has not alleged that Fiserv had the requisite knowledge of infringement. Nor has it identified a particular component of any specific Fiserv product or sufficiently alleged that a component of a Fiserv product has no "substantial non-infringing use" and was "especially made or especially adapted" to infringe. The threadbare assertion that "there are no substantial noninfringing uses for Defendants products and services" is nothing more than an unsupported recitation of a legal element of contributory infringement. Dkt. 17 at ¶ 12. AuthWallet therefore fails to plead a plausible claim for contributory infringement.

      **c. Willful Infringement -** AuthWallet's prayer for a finding of willfulness and an award of treble damages is far from sufficient to satisfy the *Iqbal/Twombly* plausibility standard. *See* Dkt. 17 § VI(e-f). To allege willful infringement, a plaintiff to allege facts plausibly showing that the accused infringer "(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019). Aside from alleging post-suit knowledge of the patent, AuthWallet does not even attempt to allege any element of willful infringement. Accordingly, the claim should be dismissed.

### III.    CONCLUSION

      AuthWallet's claims fail because the '368 Patent claims patent-ineligible subject matter, and the '368 Patent is therefore invalid under § 101. Furthermore, the Amended Complaint fails to state claims for direct, contributory, induced, and willful infringement, and dismissal is therefore also warranted pursuant to Federal Rule of Civil Procedure 12(b)(6).

      Finally, Fiserv should be awarded fees and costs and/or sanctions should be imposed on AuthWallet in light of its blatantly wasteful litigation strategy of repeatedly amending its complaints to prevent resolution of the dispositive issues raised herein.[9]

---

[9] Fiserv will provide a detailed accounting of the fees and costs actually incurred if this request is granted.

August 15, 2024                           Respectfully Submitted,

                                          */s/ Kelly Ransom*
                                          Kelly Ransom
                                          Texas State Bar No. 24109427
                                          **KELLY HART & HALLMAN LLP**
                                          303 Colorado, Suite 2000
                                          Austin, Texas 78701
                                          Tel: (512) 495-6400
                                          kelly.ransom@kellyhart.com

                                          Cabrach J. Connor
                                          Texas Bar No. 24036390
                                          CONNOR LEE & SHUMAKER PLLC
                                          609 Castle Ridge Road, Suite 450
                                          Austin, Texas 78746
                                          Telephone:  (512) 646-2060
                                          Facsimile:  (888) 587-1134
                                          Cab@CLandS.com

                                          ***Attorneys for Defendant Fiserv, Inc.***


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on August 15, 2024.

                                          */s/ Kelly Ransom*